UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

IN RE:

    ROBERT S. SHUMAKE                    BANKRUPTCY CASE NO. 13-40001-wsd

    Debtor                                     CHAPTER 7

                                               HONORABLE WALTER SHAPERO

_____/

FIFTH THIRD MORTGAGE-MI, LLC,
a Delaware limited liability company,
FIFTH THIRD MORTGAGE COMPANY,
an Ohio corporation, and FIFTH THIRD
BANK, a Michigan banking corporation,

Plaintiffs,
v                                                 ADV. CASE NO. 13-

ROBERT S. SHUMAKE

Defendant.
_____/

THOMAS R. MORRIS
Attorney for Defendant
SILVERMAN & MORRIS, P.L.L.C.
30500 Northwestern Highway
Suite 200
Farmington Hills, MI 48334
(248) 539-1330

NATHAN D. PETRUSAK (P75359)
Attorneys for Plaintiffs
O'REILLY RANCILIO P.C.
12900 Hall Road, Suite 350
Sterling Heights, MI 48313-1151
(586) 726-1000
_____/

# COMPLAINT FOR DETERMINATION OF NON-DISCHARGEABILITY OF INDEBTEDNESS PURSUANT TO SECTIONS 523 OF THE BANKRUPTCY CODE

Plaintiffs-Creditors, FIFTH THIRD MORTGAGE-MI, LLC, FIFTH THIRD MORTGAGE COMPANY, FIFTH THIRD BANK (the "Plaintiffs") by and through their attorneys, O'Reilly Rancilio P.C., for their Complaint against ROBERT S. SHUMAKE ("Shumake") respectfully alleges:

## JURISDICTION

1. On January 1, 2013, the Shumake filed a voluntary petition (the "Petition") for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Michigan.

2. On February 7, 2013, the Shumake's duly-noticed meeting of creditors was held pursuant to Section 341(a) of the Bankruptcy Code (the "Section 341 Meeting").

3. As of the date of this Complaint Shumake has not been granted a discharge.

4. This Complaint is timely because the date by which a Complaint objecting to the Shumake's discharge or to determine dischargeability of a debt expires on April 8, 2013.

5. This is an adversary proceeding in which the Plaintiffs are seeking a determination as to the dischargeability of the debt owed by the Shumake to Plaintiffs under Bankruptcy Code §§ 523(a)(2)(A) and 523(a)(2)(B).

6. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and Bankruptcy Code §§ 523 and 727.

7. This case is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and 157(b)(2)(J).

## PARTIES

8. Plaintiff-Creditor Fifth Third Mortgage-MI, LLC, is a Delaware limited liability company, with offices located at 1000 Town Center, Southfield, Michigan 48075.

9. Plaintiff-Creditor Fifth Third Mortgage Company is an Ohio corporation, with offices located at 1000 Town Center, Southfield, Michigan 48075.

10. Plaintiff-Creditor Fifth Third Bank is a Michigan banking corporation, with offices located at 1000 Town Center, Southfield, Michigan 48075.

11. Defendant-Debtor Robert S. Shumake is a debtor in a Voluntary Chapter 7 Proceeding before this Court, Case Number 13-40001-wsd.

## COMMON ALLEGATIONS

12. Plaintiffs incorporate by reference each allegation contained within this Complaint as though fully set forth herein.

13. Commencing in 2004, Shumake conspired and acted in concert with other non-debtor conspirators to defraud Plaintiffs by undertaking and carrying out a scheme to obtain mortgage funds from Plaintiffs by fraudulent means through the submission of false and fraudulent statements, documents, and information (the "Fraudulent Scheme") by the following methods:

14. Shumake would identify a property to serve as the vehicle for fraudulently obtaining mortgage loan proceeds from the Plaintiffs (each of such properties is defined herein as a "Subject Property" and, collectively, as the "Subject Properties"). The Subject Properties are residential properties located in the city of Bloomfield Hills and the Township of Bloomfield Hills.

15. Shumake, with other non-debtor conspirators, would obtain a fraudulent appraisal of a Subject Property which would be furnished to Plaintiffs for the purpose of establishing to Plaintiffs the purported fair market value of the respective Subject Property. Each appraisal was performed by an appraiser selected by Shumake and such appraisals in each case stated a fair market value for the respective Subject Property far in excess of the actual fair market value of the respective Subject Property. Each of such appraisals was furnished to Plaintiffs by Shumake for the purpose of inducing and causing Plaintiffs to make a mortgage loan to various Straw Borrowers for acquisition of the Subject Property and to Shumake with funds from the mortgage closing in amounts far in excess of the actual value of the Subject Properties.

16. Shumake located and recruited the Straw Borrowers and created entities to purchase the Subject Properties from the existing owners of the Subject Properties.

17. Each of the Subject Properties was purchased from its existing owner in either a 1-step or 2-step transaction in which the purchase (in a 1-step transaction) or the purchase and immediate resale (in a 2-step transaction) resulted in a purchase price for the Subject Property far in excess of the respective Subject Property's actual value and equal to the value determined by the appraisers for the respective Subject Property based upon the fraudulent appraisals referenced above. The purchase and/or purchase and immediate resale of a property at a highly inflated price to an individual straw borrower is commonly known as a "flip" sale in which property is quickly transferred for an excessive sale price for the purpose of withdrawing fraudulently obtained mortgage proceeds in connection with the financing of the purchase of the property.

18. In order to carry out the "flip" sale transactions, Shumake located individuals with allegedly good credit histories who were willing to participate in the fraud. These individuals are referred to herein as the "Straw Borrowers".

19. The Straw Borrowers cooperated with Shumake in creating and furnishing Plaintiffs with documents, statements, and information regarding the Straw Borrowers' employment, income, and assets through the preparation and submission to Plaintiffs of false documents including falsified tax returns and bank account statements, falsified employment information, and similar false statements and information.

20. The Straw Borrowers were paid for their participation in the Fraudulent Scheme by the receipt of mortgage loan proceeds directed to them by Shumake.

21. The closings on the fraudulent mortgage loans were arranged, with the knowledge and participation of the title agency closing the loan, so that the down payment for the Subject Property to be purchased by the Straw Borrower was actually, and impermissibly, generated from Plaintiffs' mortgage funds paid at the closing.

22. With respect to Shumake, the Fraudulent Scheme involved at least three mortgage loans, each of which was arranged by Shumake for his own benefit and for the benefit of other non-debtor individuals and entities.

**4000 OVERLEA COURT**

23. On or about May 13, 2005, Straw Borrower Floyd Anderson III submitted a mortgage loan application for the purchase of a Subject Property located at 4000 Overlea Court, Bloomfield, Michigan 48302.

24. The mortgage loan application submitted by Floyd Anderson III contained statements and information with respect to Floyd Anderson III's assets and employment, including false employment information and falsified bank statements, which false statements and information were provided to Plaintiffs in order to induce Plaintiffs to make the requested mortgage loan.

25. Robert Shumake, in conjunction with other non-debtor conspirators, conspired with and assisted Defendant Floyd Anderson III in furnishing false statements and information to Plaintiffs.

26. In support of his investment in the Subject Property, Floyd Anderson III submitted to Plaintiffs an official bank check purportedly in the amount of $380,000.00 payable to a construction company. Plaintiffs' investigation determined that the official bank check was originally issued in the amount of $38.00 and was fraudulently altered to appear in the larger amount.

27. Through Shumake, State Appraisals, Inc. and its owner, James C. Boudreau, submitted to Plaintiffs on March 17, 2005, an appraisal of 4000 Overlea Court stating a value of $3,800,000.00.

28. Through Shumake, CJ Appraisals, Ltd. and its owner, Christine D. Mays, submitted to Plaintiffs on May 17, 2005, an appraisal of 4000 Overlea Court stating a value of $3,800,000.00.

29. These appraisals substantially overstated the value of the Subject Property. Based upon a review appraisal subsequently obtained by Plaintiffs, it is believed that the fair market value of the 4000 Overlea Court property was not greater than $835,000.00.

30. At the closing, Defendant Floyd Anderson III purportedly purchased the Subject Property for the sum of $835,000.00.

31. On May 27, 2005, a closing was conducted at Continental Title Insurance Agency, Inc. ("CTIAI") at which Plaintiff's mortgage loan funds in the amount of $1,258,740.00 were disbursed by CTIAI to the seller for the net purchase price and costs of sale based upon the $835,000.00 purchase price. The bulk of the remaining mortgage loan proceeds of

approximately $408,245.00 were then distributed Defendant Robert Shumake's company, Meek Overlea LCC.

32. The Anderson loan, thereafter, went into default, with amounts owing to Plaintiffs, as of August 1, 2006, in the principal sum of $1,257,680.49, together with interest of $34,268.67, and late fees of $1,366.28, for a total of $1,293,315.44.

## 3941 QUARTON ROAD

33. On or about October 18, 2005, Straw Borrower Chenzira Maples submitted a mortgage loan application for the purchase of a Subject Property located at 3941 Quarton Road, Bloomfield Hills, Michigan 48302.

34. The mortgage loan application submitted by Chenzira Maples contained statements and information with respect to Chenzira Maples' assets and income, including falsified bank statements and tax returns, which false statements and information were provided to Plaintiffs in order to induce Plaintiffs to make the requested mortgage loan.

35. In support of her investment in the Subject Property, Chenzira Maples submitted to Plaintiffs a fraudulent "gift" letter, which purportedly provided her with an amount in excess of $1,000,000.00; a sample of this gift letter used was E-mailed from non-debtor conspirators to Shumake.

36. The mortgage loan was brokered by Direct Financial Services Corporation, a Michigan corporation, and its owner, Alan Lucia.

37. Shumake, in conjunction with other non-debtor conspirators, conspired with and assisted Chenzira Maples in furnishing false statements and information to Plaintiffs.

38. Through Shumake, Greyhound Appraisals and Investments, L.L.C. and its owner, Nathan Hogan, submitted to Plaintiffs on August 2, 2005, an appraisal of 3941 Quarton Road stating a value of $3,800,000.00.

39. Through Shumake, the Appraisal Place, Inc. and its owner, Pamela S. Siira, submitted to Plaintiffs on October 3, 2005, an appraisal of 3941 Quarton Road stating a value of $3,800,000.00.

40. These appraisals substantially overstated the value of the Subject Property. Based upon a review appraisal subsequently obtained by Plaintiffs, it is believed that the fair market value of the 3941 Quarton Road property was not greater than $500,000.00.

41. On October 18, 2005, a closing was held at the offices of Continental Title Insurance Agency, Inc. ("CTIAI") at which the Subject Property was sold to Meek Quarton LLC for $625,000.00 and immediately transferred by Meek Quarton LLC to Straw Borrower Chenzira Maples for the purchase price $1,950,000.00.

42. At the closing, CTIAI disbursed the sum of $56,860.65 to Direct Financial Services Corporation for its brokering of the mortgage loan to Plaintiffs.

43. At the closing, CTIAI disbursed from Plaintiffs' mortgage loan proceeds the sum of $1,287,269.90 to Meek Quarton LLC. This amount was fraudulently divided by Meek Quarton LLC between Straw Borrower Chenzira Maples in the amount of $595,085.89 and Robert Shumake's company, Inheritance Automotive Group LLC, in the amount of $692,184.10.

44. In furtherance of the fraud, the funds improperly disbursed to Chenzira Maples in the amount of $595,085.89 by Meek Quarton LLC (i.e. Robert Shumake) were then immediately used to purchase a cashier's check listing Chenzira Maples as the payor and re-deposited with CTIAI, thereby making it appear as though Ms. Maples had made the required down payment

necessary for the loan to close. In reality, the cashier's check was purchased with the Bank's escrowed funds and not that of Ms. Maples.

45. The Maples loan, thereafter, went into default with amounts owing to Plaintiffs, as of August 1, 2006, in the principal sum of $1,374,380.00, together with interest of $44,022.53 as of August 1, 2006, and late fees of $2,831.61, for a total of $1,421,234.14

### 3935 QUARTON ROAD

46. On or about August 9, 2005, Straw Borrower Stephanie P. Glover submitted a mortgage loan application for the purchase of a Subject Property located at 3935 Quarton Road, Bloomfield Hills, Michigan 48302.

47. The mortgage loan application submitted by Stephanie P. Glover contained statements and information with respect to Stephanie P. Glover's assets, including falsified bank statements, which false statements and information were provided to Plaintiffs in order to induce Plaintiffs to make the requested mortgage loan

48. Shumake, in conjunction with other non-debtor conspirators, conspired with and assisted Stephanie P. Glover in furnishing the false statements and information to Plaintiffs.

49. On or about February 23, 2005, nominal seller Julian Glass purchased 3935 Quarton Road for the purchase price of $631,000.00.

50. Through Shumake, Greyhound Appraisals and Investments, L.L.C. and its owner, Nathan Hogan, submitted to Plaintiffs on July 16, 2005, an appraisal of 3935 Quarton Road stating a value of $3,800,000.00.

51. Through Shumake, State Appraisals, Inc. and its owner, James C. Boudreau, submitted to Plaintiffs on August 16, 2005, an appraisal of 3935 Quarton Road stating a value of $3,800,000.00.

52. Based upon a review appraisal subsequently obtained by Plaintiffs, it is believed that the fair market value of the 3941 Quarton Road property was not greater than $475,000.00.

53. At a closing at the offices of Continental Title Insurance Agency, Inc. ("CTIAI") on August 30, 2005, Stephanie P. Glover purportedly purchased the Subject Property from Julian Glass for the purchase price of $1,950,000.00 and CTIAI disbursed Plaintiffs' mortgage loan proceeds in the amount of $1,754,380.00 to fund the purchase.

54. From Plaintiffs' mortgage loan proceeds, CTIAI disbursed the sum of $1,570,843.82 to Julian Glass who, in turn, remitted the sum of $816,954.34 back to Stephanie P. Glover in partial payment of the purchase price. The checks transferring these funds were all dated and negotiated on the date of closing.

55. The remaining $753,889.48 of the mortgage loan proceeds received by Julian Glass was paid to Robert Shumake's company, Inheritance Automotive Group LLC, in the amount of $688,884.48 and the remaining $65,000.00 retained by Julian Glass.

56. CTIAI and other non-debtor individuals participated with, and cooperated in, this Fraudulent Scheme by disbursing the mortgage loan funds in such a manner as to provide the appearance that Stephanie P. Glover was providing the down payment for the Subject Property out of her own funds and failing to disclose that Shumake's company, Inheritance Automotive Group, LLC, was the primary recipient of the mortgage loan funds.

57. The Glover loan, thereafter, went into default with amounts owing to Plaintiffs, as of August 1, 2006, in the principal sum of $1,754,380.00, together with interest of $82,876.00, and late fees of $4,674.65, for a total of $1,841,931.08.

## LAWSUIT AND SETTLEMENT

58. On August 9, 2006, Plaintiffs commenced a lawsuit against Shumake with respect to the above transactions in Oakland County Circuit Court Case No. 2005-070592 (Shumake was added to the case originally filed November 16, 2005 via a Second Amended Complaint).

59. On April 14, 2008, Shumake entered into a Mutual Release and Settlement Agreement with Plaintiffs (the "Settlement Agreement").

60. Under the terms of the Settlement Agreement, Shumake was to pay Plaintiff's a total of $750,000.00, with $200,000.00 to be paid upon execution of the Settlement Agreement and with $550,000.00 to be paid to Plaintiff's by August 1, 2009.

61. The Settlement Agreement provided further that Shumake was to execute a Consent Judgment in favor of Plaintiff's in the amount of $1,000.000.00, which Plaintiffs could have entered if Shumake failed to make the $550,000.00 payment.

62. Shumake executed the Consent Judgment and, thereafter, defaulted on his obligation to pay Plaintiffs $500,000.00.

63. The Consent Judgment in the amount of $1,000.000.00 was entered with the Oakland County Circuit Court on August 10, 2009 (Exhibit A).

64. Under the terms of both the Settlement Agreement and the Consent Judgment, Shumake expressly agreed that the amount owing to Plaintiffs under the Consent Judgment would be non-dischargeable under §§ 523(a)(2)(A) and 523(a)(2)(B) of the Bankruptcy Code.

65. Additionally, and more importantly, Shumake expressly agreed that "all defenses to non-dischargeability of the Judgment are waived with prejudice."

66. On January 1, 2013, Shumake filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code fraudulently misrepresented the amount due and owing to Plaintiffs

under the terms of the Settlement Agreement and Consent Judgment by listing the debt as "Business Loan" on Schedule F of his Petition.

67. Despite his agreement that the amount owing to Plaintiff would be non-dischargeable and his express waiver of defenses to non-dischargeability, Shumake seeks through his Chapter 7 case to discharge the debt owing to Plaintiffs arising out fraudulent scheming.

**COUNT I – NON-DISCHARGEABILITY OF DEFENDANTS' DEBT TO PLAINTIFFS UNDER SECTION 523(a)(2)(A) OF THE BANKRUPTCY CODE**

68. Plaintiffs incorporate by reference each allegation contained within this Complaint as though fully set forth herein.

69. Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt –

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

(A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

70. All or part of the debt Plaintiffs seek to recover from Shumake arises out of Shumake's Fraudulent Scheme and is non-dischargeable as it is a debt for money, property, services, or an extension, renewal, or refinancing of credit, that was obtained by false pretenses, a false representation, or actual fraud within the meaning of Bankruptcy Code § 523(a)(2)(A).

## COUNT II – NON-DISCHARGEABILITY OF DEFENDANTS' DEBT TO PLAINTIFFS UNDER SECTION 523(a)(2)(B) OF THE BANKRUPTCY CODE

71. Plaintiffs incorporate by reference each allegation contained within this Complaint as though fully set forth herein.

72. Bankruptcy Code § 523(a)(2)(B) provides, in relevant part, that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt –

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

(B) use of a statement in writing –

(i) that is materially false;

(ii) respecting the debtor's or an insiders financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused or made to be published with intent to deceive . . . .

73. All or part of the debt Plaintiffs seek to recover from Shumake arises out of Shumake's Fraudulent Scheme and is non-dischargeable as it is a debt for money, property, services, or an extension, renewal, or refinancing of credit, that was obtained by a statement in writing that was materially false with respect to the Debtor's or an insider's financial condition

on which Plaintiffs reasonably relied and was made by Shumake with the intent to deceive within the meaning of Bankruptcy Code § 523(a)(2)(B).

WHEREFORE, the Plaintiffs respectfully requests that this Court enter a Judgment determining that the any debt owing from Defendant to Plaintiffs as a consequence of Defendant's Fraudulent Scheme and/or the Consent Judgment is non-dischargeable under Bankruptcy Code §§ 523(a)(2)(A), 523(a)(2(B), and granting the Plaintiffs such other and further relief as this Court may deem just and proper.

Respectfully submitted,

O'REILLY RANCILIO P.C.

By: */s/ Nathan D. Petrusak*
NATHAN D. PETRUSAK (P75359)
Attorneys for Plaintiff
12900 Hall Road, Suite 350
Sterling Heights, MI 48313
(586) 726-1000

Dated: April 8, 2013