UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

ROBERT S. SHUMAKE,

        Debtor.
_____/

Chapter 7
Case No. 13-40001
Hon. Walter Shapero

GENERAL RETIREMENT SYSTEM OF THE
CITY OF DETROIT, POLICE AND FIRE
RETIREMENT SYSTEM OF THE CITY OF
DETROIT and W&D REAL ESTATE
OPPORTUNITY FUND I, LLC f/k/a
Inheritance Capital Group, LLC, a Michigan
limited liability company,

        Plaintiffs,

v.

ROBERT S. SHUMAKE,

        Defendant.
_____/

Adver. Proc. No. _____

COMPLAINT TO EXCEPT
DEBTS FROM DISCHARGE

    Plaintiffs General Retirement System of the City of Detroit ("GRS"), Police and Fire Retirement System of the City of Detroit ("PFRS") and W&D Real Estate Opportunity Fund I, LLC, f/k/a Inheritance Capital Group, LLC ("Inheritance Capital Group, LLC") state as follows for their complaint against Robert S. Shumake:

Jurisdiction

    1.    On January 1, 2013, Shumake filed in this Court a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").

2. This is an adversary proceeding in which plaintiffs seek both money judgments and determinations under section 523(a) of the Bankruptcy Code that the judgment debts are excepted from any discharge Shumake might receive in this chapter 7 case.

3. The Court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334 and section 523 of the Bankruptcy Code.

4. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

Parties

5. Plaintiff GRS is a pension plan and trust established by the Charter and Municipal Code of the City of Detroit, Michigan.

6. Plaintiff PFRS is a pension plan and trust established by the Charter and Municipal Code of the City of Detroit, Michigan.

7. Plaintiff Inheritance Capital Group, LLC is a Michigan limited liability company.

8. Shumake is the Debtor.

Common Allegations

9. The GRS and the PFRS (together, the "Retirement Systems") are public employee pension plans and trusts providing retirement, disability and survivor benefits to eligible employees of the City of Detroit and of the City of Detroit's Police and Fire Departments and their beneficiaries.

10. On August 22, 2005, Inheritance Capital Operations LLC filed its articles of organization with the State of Michigan, and, on July 7, 2006, it filed its certificate of amendment to the articles of organization to change its name to ICG Real Estate Advisors, LLC.

2

11.     At all relevant times, Shumake was the chief executive officer and owned 85 percent of the membership interests of ICG Real Estate Advisors, LLC, and Adrienne Lance Lucas was the chief operating officer and owned 15 percent.

12.     Shumake controlled and directed the affairs of ICG Real Estate Advisors, LLC.

13.     On several occasions since 2006 Shumake has approached the Retirement Systems with investment opportunities.

## Inheritance Capital Group

14.     In 2006 Shumake approached the Retirement Systems regarding an opportunity to invest in a real estate fund to be called Inheritance Capital Group.

15.     A private placement memorandum proposed to provide consistent returns through the purchase and management of office, residential, retail and light industrial buildings to be leased to high net worth and/or credit grade tenants.

16.     Shumake proposed to organize the fund as a Michigan limited liability company of which the Retirement Systems and other investors would be members.

17.     Shumake also proposed that the fund be managed by ICG Real Estate Advisors, LLC, a Michigan limited liability company in which Shumake owned 85 percent of the membership interests.

18.     On June 2, 2006 Inheritance Capital Group, LLC filed its articles of organization with the State of Michigan.

19.     On July 12, 2006, the Board of Trustees of GRS approved a $12 million investment in Inheritance Capital Group, LLC.

20.     On July 13, 2006, the Board of Trustees of PFRS approved a $15 million investment in Inheritance Capital Group, LLC

21. The Retirement Systems and ICG Real Estate Advisors, LLC entered into the Operating Agreement of Inheritance Capital Group, LLC (the "Operating Agreement") which was effective as of July 12, 2006.

22. The Retirement Systems were the only investors in Inheritance Capital Group, LLC.

23. Between July 2006 and September 2007, ICG Real Estate Advisors, LLC issued capital calls to GRS in the total amount of $11,999,494.80, which GRS honored.

24. Between July 2006 and September 2007, ICG Real Estate Advisors, LLC issued capital calls to PFRS in the total amount of $14,795,341.24, which PFRS honored.

25. Section 5.1 of the Operating Agreement entitles the manager to an annual management fee equal to 1.25 percent of total assets under management.

26. Based on total investor commitments of $27 million, a 1.25 percent annual management fee would entitle ICG Real Estate Advisors, LLC to $337,500.

27. Section 6.6 of the Operating Agreement provides that the manager shall not withdraw funds from Inheritance Capital Group, LLC except as expressly permitted by the Operating Agreement.

28. Notwithstanding the Operating Agreement's proscription of withdrawals by the manager, ICG Real Estate Advisors, LLC withdrew or otherwise received the benefit of many millions of dollars from Inheritance Capital Group, LLC beginning in July 2007.

29. Inheritance Capital Group, LLC's financial statements included an account labeled "Due From ICG Real Estate Advisors" that recorded withdrawals by ICG Real Estate Advisors, LLC and repayments or other credits, including management fees, as if Inheritance Capital Group were a lender to ICG Real Estate Advisors, LLC (the "Loan Account").

30. In 2010, GRS and PFRS commenced separate actions against ICG Real Estate Advisors, LLC in the State of Michigan Circuit Court for the County of Wayne to have ICG Real Estate Advisors, LLC removed as manager of Inheritance Capital Group for reasons unrelated to withdrawals.

31. On May 2, 2011, the Wayne County Circuit Court replaced ICG Real Estate Advisors, LLC with W&D Real Estate Opportunity Fund I Manager, LLC as manager of Inheritance Capital Group.

32. The Retirement Systems subsequently discovered the Loan Account and, in August 2011, they commissioned a forensic review of the books and records of Inheritance Capital Group, LLC.

33. The review showed 369 debits and 163 credits to the Loan Account.

34. Through these transactions, ICG Real Estate Advisors, LLC received the benefit of $7,268,060 and purportedly "repaid" $5,927,778 in the form of credits, leaving a $1,340,282 balance due Inheritance Capital Group as of June 2, 2011.

35. Of the $7,268,060 in debits, $4,612,610 was disbursed directly to ICG Real Estate Advisors, LLC without any documented business purpose.

36. In addition, amounts were disbursed to entities related to Shumake, including $404,598 to Meek Communications, LLC.

37. On May 3, 2011, the day after the Wayne County Circuit Court removed ICG Real Estate Advisors, LLC as manager of Inheritance Capital Group, $300,000 was transferred from Inheritance Capital Group with "withdrawal" being the only notation made in the Loan Account.

5

9061056.2 14893/139058
13-40001-mlo    Doc 57    Filed 05/16/13    Entered 05/16/13 11:33:48    Page 5 of 9

38. The forensic review identified four appropriate adjustments to the Loan Account that bring the Loan Account balance to $5,051, 232 as follows:

| | |
|---|---|
| $1,340,282 | balance at 6/2/11 |
| 2,346,179 | excessive management fee credits |
| 576,213 | unsupported expense reimbursement credits |
| 750,000 | unsupported organizational expense credits |
| 38,559 | unsupported miscellaneous journal entries |
| 3,710,951 | total loan account adjustments |
| $5,051,232 | adjusted loan account balance |

39. The forensic review also identified $497,182 in legal fees recorded as expenses of Inheritance Capital Group that appear to relate to legal matters involving ICG Real Estate Advisors, LLC and not Inheritance Capital Group, including $125,000 paid to counsel for ICG Real Estate Advisors, LLC in the Wayne County Circuit Court litigation.

Count I
Conversion and 11 U.S.C. § 523(a)(4) and (6)

40. ICG Real Estate Advisors, LLC's withdrawals from Inheritance Capital Group, LLC were distinct acts by Shumake of dominion over Inheritance Capital Group's property.

41. Shumake's acts were wrongful given Inheritance Capital Group, LLC's ownership rights, the Operating Agreement's express proscription of such withdrawals and the use of inflated management fees and unsupported expenses to "repay" the withdrawals.

42. Shumake is therefore liable for conversion, and, under M.C.L. § 600.2912, for treble damages.

43. Shumake's conversion debt is nondischargeable because it is also a debt for embezzlement or larceny within the meaning of Bankruptcy Code section 523(a)(4) or for willful and malicious injury within the meaning of Bankruptcy Code section 523(a)(6).

9061056.2 14893/139058

13-40001-mlo    Doc 57    Filed 05/16/13    Entered 05/16/13 11:33:48    Page 6 of 9

WHEREFORE, plaintiffs request a money judgment against Shumake in an amount three times the amount he is found to have converted and a judgment determining that the conversion debt is nondischargeable, together with interest, costs and attorney's fees as provided by law.

### Count II
### Breach of Fiduciary Duty and 11 U.S.C. § 523(a)(4)

44. As manager of Inheritance Capital Group, LLC, ICG Real Estate Advisors, LLC owed plaintiffs fiduciary duties under M.C.L. § 450.4404 and Michigan common law.

45. ICG Real Estate Advisors, LLC's withdrawals breached its fiduciary duties to plaintiffs.

46. Given his control of ICG Real Estate Advisors, LLC and his resulting control of Inheritance Capital Group, LLC, Shumake also owed plaintiffs fiduciary duties that he breached through the withdrawals, the accounting for the withdrawals, the inflated management fees and the improper expense submissions.

47. Shumake's breach of fiduciary duty debt is nondischargeable because it is also a debt for fraud of defalcation while acting in a fiduciary capacity within the meaning of 11 U.S.C. § 523(a)(4).

WHEREFORE, plaintiffs request a money judgment against Shumake in an amount corresponding to his breaches of fiduciary duty and a judgment determining that his breach of fiduciary duty debt is nondischargeable together with interest, costs and attorney's fees as provided by law.

### ICG Leaseback Fund

48. In 2007 Shumake approached the Retirement Systems with an investment opportunity involving the purchase and leaseback of five General Motors Corporation parts warehouses.

49. The Retirement Systems agreed to participate in the transaction by means of a loan to ICG REA Manager, LLC, a Michigan limited liability company and a wholly-owned subsidiary of ICG Real Estate Advisors, LLC.

50. ICG REA Manager, LLC, in turn, lent these funds to its wholly-owned subsidiary, ICG Leaseback Fund I, LLC, which used the funds, along with the proceeds of another loan from a third party, to acquire the warehouses from General Motors.

51. In connection with the Retirement Systems' loan to ICG REA Manager, LLC, Shumake requested that $546,000 be paid to Atrium Financial, LLC as a consulting fee.

52. The Retirement Systems specifically asked Shumake to identify the principal(s) of Atrium Financial, LLC and to describe the reason for the requested payment.

53. In response Shumake and/or other representatives of ICG REA Manager, LLC represented to the Retirement Systems that Shikha Hamilton and Kevin Chastang were Atrium Financial, LLC's principals and that the requested fee was for their consulting services in connection with the General Motors transaction.

54. Based on these representations, the Retirement Systems made the requested payment.

55. The sole principal of Atrium Financial, LLC was actually Derrick Miller, who at the time served as Chief Administrative Officer and/or Chief Information Officer in the administration of then-Detroit Mayor Kwame Kilpatrick.

## Count III
### Fraudulent Misrepresentation and 11 U.S.C. § 523(a)(2)

56. Shumake's representations concerning Atrium Financial, LLC were material and false, he knew they were false, he made them with the intention that they be acted upon by the Retirement Systems, the Retirement Systems so acted and thereby suffered a loss.

57. Shumake is therefore liable for fraudulent misrepresentation under Michigan common law.

58. Shumake's fraudulent misrepresentation debt is nondischargeable because it is a debt for money obtained by false pretenses, a false representation, or actual fraud within the meaning of 11 U.S.C. § 523(a)(2).

WHEREFORE, plaintiffs request a money judgment against Shumake in the amount of $546,000 and a judgment determining that his fraudulent misrepresentation debt is nondischargeable, together with interest, costs and attorney's fees as provided by law.

Dated: May 17, 2013

CLARK HILL PLC

By: *Peter A. Jackson* (P35528)
500 Woodward, 35th Floor
Detroit, Michigan 48226
(313) 965-8359
pjackson@clarkhill.com
Attorneys for Plaintiffs