UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                                         Case No. 13-40001-WSd

**ROBERT S. SHUMAKE,**                 Chapter 7

      Debtors.                                 HON. WALTER SHAPERO
_____/

**DANIEL M. McDERMOTT,**
**United States Trustee,**                     Adversary Case No.

      Plaintiff,

v.

**ROBERT S. SHUMAKE,**

      Defendant.
_____/

**COMPLAINT FOR DENIAL OF DISCHARGE**
**PURSUANT TO 11 U.S.C. § 727(a)(2), (3), (4) and (5)**

      Daniel M. McDermott, United States Trustee, complains of the Defendant, Robert S. Shumake, as follows:

**COMMON ALLEGATIONS**

      1.      Defendant Robert S. Shumake (hereafter, "Mr. Shumake"), is an individual residing at 381 Keswick Street, Bloomfield, Michigan 48304.

      2.      The above-captioned Chapter 7 proceeding was commenced by the filing of a voluntary petition on January 1, 2013.

      3.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J), over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334.

4. Plaintiff Daniel M. McDermott is the United States Trustee for Region 9, comprised of the States of Michigan and Ohio.

5. Pursuant to this Court's Order of March 23, 2013 [Doc. No. 27], the deadline for parties in interest to object to the Defendant's discharge is June 7, 2013.

6. The Defendant filed his Petition, Schedules and Statement of Financial Affairs on or about January 15, 2013. [Doc. No. 8]. All of these documents were signed by the Defendant under penalty of perjury.

7. The Defendant filed Amended Schedules on or about February 19, 2013. [Doc. No. 13]. All of these documents were signed by the Defendant under penalty of perjury.

8. At the § 341 Meeting of Creditors held February 21, 2013, the Defendant testified under oath that his petition and corresponding schedules as well as his Statement of Financial Affairs, remained true, accurate, and complete.

**The Defendant's Undisclosed Corporate Interests and Activities**

9. On Schedule B, the Defendant discloses the following seven corporate entities:

    a. ICG Real Estate Advisors, LLC;

    b. ICG Leaseback Fund I, LLC;

    c. Robert Shumake, LLC;

    d. ICG Real Estate Advisors Manager, LLC;

    e. Meek Communications, LLC;

    f. Meek Lakewood, LLC; and

    g. Southfield Properties Group, LLC.

10. On Question 18 to the Statement of Financial Affairs, the Defendant disclosed that he had been involved in the following corporate entities as an officer, director, partner, or

managing executive of a corporation, or held 5% or more of the voting or equity shares of such corporate entities, within the six years prior to his filing:

    a.    The seven entities disclosed in ¶9 above;

    b.    Shufund Capital, LLC;

    c.    Island Capital Manager;

    d.    ICG EMRG-HD, LLC;

    e.    ICG EMRG-KY, LLC; and

    f.    Second Life, LLC

11. In reality, however, Mr. Shumake had additional interests in the following corporate entities in the relevant time period, which he failed to disclose:

12. **Meek Development 1, LLC**, a Michigan limited liability corporation.

    a. The entity was created by Mr. Shumake on August 7, 2011 as its organizer.

    b. In a deposition dated January 12, 2010, Mr. Shumake testified that Meek Development 1, LLC is the entity which owns his 5% stake in an office building located at 25900 Eleven Mile Road, Southfield, Michigan.

    c. It appears, therefore, that Mr. Shumake had an interest in the corporate entity during the relevant six year time frame prior to filing his bankruptcy petition, but did not disclose that interest in his bankruptcy filings.

13. **Real Times Media**, a Michigan limited liability company.

    a. The entity was created on November 8, 2006, and is still an active entity.

    b. In a deposition dated January 12, 2010, Mr. Shumake testified that he owns a 5% interest in the entity.

c. It appears, therefore, that Mr. Shumake had an interest in the corporate entity during the relevant six year time frame prior to filing his bankruptcy petition, but did not disclose that interest in his bankruptcy filings.

**The Defendants' Undisclosed Publications**

14. The Defendant's Schedule B discloses no interests in published materials or other intellectual property.

15. In reality, however, Mr. Shumake has published the following two books which are currently being marketed for sale as explained below.

16. *For Entrepreneurs Who Considered Suicide When Business Got Tough*.

    a. The book was written by Mr. Shumake, and published by Legacy Masterpieces Publishing in January 2005.

    b. The book is currently offered for sale on Amazon.com.

    c. In a deposition taken January 12, 2010, Mr. Shumake admitted authorship of the book.

    d. The book, and proceeds derived from the book for Mr. Shumake, are property of Mr. Shumake's bankruptcy estate.

17. *Climbing Your Inner Mountain: Ten Steps to Reaching Any Goal*.

    a. The book was written by Mr. Shumake, and was published by Take the Land Publishing in May 2013.

    b. The book is currently offered for sale on Amazon.com.

    c. The book was advertised on the internet as forthcoming at the time his bankruptcy was filed in early 2013.

d. The book, and proceeds derived from the book for Mr. Shumake, are property of Mr. Shumake's bankruptcy estate.

**The Defendant's Property in the Dominican Republic**

18. In a deposition taken January 12, 2010, Mr. Shumake admitted that he was the owner of undeveloped beachfront property in the Dominican Republic.

19. Mr. Shumake further admitted in the January 12, 2010 deposition that he purchased the real property described in ¶18 in approximately 2004, for $70,000.00.

20. Mr. Shumake further admitted in the January 12, 2010 deposition that he still owned the real property described in ¶18 at the time that deposition was taken.

21. Mr. Shumake further admitted in the January 12, 2010 deposition that he was holding the property described in ¶18 until determining who the new President of the Dominican Republic would be.

22. Upon information and belief, Mr. Leonel Fernandez was the President of the Dominican Republic from August 16, 2004 until August 16, 2012.

23. Upon information and belief, the next Presidential election in the Dominican Republic after the January 12, 2010 deposition of Mr. Shumake was held on May 20, 2012.

24. As a result of the May 20, 2012 election in the Dominican Republic, Mr. Danilo Medina was elected President of the Dominican Republic. President Medina took office on August 16, 2012.

25. The May 20, 2012 election was within two years of Mr. Shumake's bankruptcy filing on January 1, 2013.

26. The May 20, 2012 election was within one year of Mr. Shumake's bankruptcy filing on January 1, 2013.

27. No transfer of the property described in ¶18 was disclosed by Mr. Shumake in response to Question 10 on his Statement of Financial Affairs.

28. It appears, therefore, that Mr. Shumake had an interest in the property described in ¶18 in the year prior to filing his bankruptcy petition, but did not disclose his current interest in that real property, nor the disposition of that real property if the real property was transferred, nor the proceeds from such a transfer if one occurred, nor the dissipation of said proceeds if a transfer occurred.

29. Even if the property described in ¶18 was transferred by Mr. Shumake outside the two-year period required on Question 10 to the Statement of Financial Affairs (i.e., between the January 12, 2010 deposition and January 1, 2011), Mr. Shumake has not explained the dissipation of the proceeds from said transaction, if such a transaction in fact occurred.

**The Defendant's Lack of Documentation**

30. The Defendant's Schedule B discloses interests in two bank accounts: one in Botswana (where, the Defendant testified at his § 341 Meeting of Creditors, he is a trade representative) and another in the Dominican Republic (where, as explained above, he either has or had real property).

31. The Defendant's Statement of Financial Affairs discloses that Mr. Shumake received $300,000 in life insurance proceeds in 2012, the year prior to his bankruptcy filing.

32. On information and belief, and based upon representation made either by Mr. Shumake directly or by his counsel, Mr. Shumake no longer has the $300,000 received from life insurance proceeds described in ¶31.

33. The Defendant's Statement of Financial Affairs discloses that Mr. Shumake donated $30,000 to an entity known as the Solid Rock Assembly of God in March 2012.

34. The Defendant's Statement of Financial Affairs discloses that Mr. Shumake donated $20,000 to "persons who participated in [a] barbeque for the homeless" in July 2012.

35. The Defendant's Schedule F discloses a $200,000 debt to a Mr. Sal Calvalere, indicated as a "Loan for business purposes."

36. The Defendant's Schedule F discloses a $150,000 debt to a Mr. Angelo D'Alessandro, indicated as a "Loan for business purposes."

37. K. Jin Lim is the duly appointed chapter 7 bankruptcy trustee of the Defendant's bankruptcy estate.

38. Ms. Lim, through counsel, requested a number of records from Mr. Shumake pertaining to his financial affairs to address statements by Mr. Shumake in his bankruptcy papers, including the facts disclosed in ¶¶30-36. Such requested documents include but are not limited to the following ("the Trustee's Record Request"):

    a. Personal and business financial account records including account statements and ledgers for the period of January 1, 2011 through current (business records to be provided for entities listed on Debtor's Schedule B and Statement of Financial Affairs);

    b. Personal and business tax returns for 2009 through 2012 tax years;

    c. 2012 personal and business K-1s, 1099s, and W-2s;

    d. Loan applications completed between January 1, 2008 and now;

    e. Fifth Third Bank loan application (no matter the date);

    f. Pleadings and other documents regarding litigation by or against General Retirement System, Deutsche Bank and Pam Kake, LLC;

    g. Prime Financial, Inc. loan application;

    h. Records regarding loan by Sal Calvalere loan and disposition of proceeds;

i. Records regarding loan by Angelo D'Allessandro and disposition of proceeds;

j. Records regarding life insurance proceeds; and

k. Records reflecting charitable contributions made since 2010.

39. In response to the Trustee's Record Request, Mr. Shumake, through his counsel, indicated that he does not have bank statements for the two foreign bank accounts described above, nor does he have bank statements for his corporate entities as described above with the exception of a single bank statement for the Botswana account dated April 30, 2013.

40. In response to the Trustee's Record Request, Mr. Shumake, through his counsel, indicated that he does not have records regarding the loans from either Mr. Calvalere or Mr. D'Allessandro, but "is going to try to track down the records."

41. In response to the Trustee's Record Request, Mr. Shumake, through his counsel, indicated that he does not have access to records for the entity Meek Lakewood, LLC.

42. In response to the Trustee's Record Request, Mr. Shumake, through his counsel, indicated that he does not have, nor did he maintain, records regarding the disposition of the $300,000 in life insurance proceeds he received in 2012.

43. In response to the Trustee's Record Request, Mr. Shumake, through his counsel, indicated that he does not have records regarding the two charitable contributions described in ¶¶33-34 above.

**Disappearance of $300,000 in Detroit Pension Funds**

44. The General Retirement System of the City of Detroit ("GRS") and the Police and Fire Retirement System of the City of Detroit ("PFRS") (collectively, "the Retirement Systems") are pension plans and trusts established by the Charter and Municipal Code of the City of

Detroit, Michigan, and together are public employee pension plans and trusts providing retirement, disability and survivor benefits to eligible employees of the City of Detroit and of the City of Detroit's Police and Fire Departments and their beneficiaries.

45. At all relevant times, Mr. Shumake was the CEO and 85% owner of ICG Real Estate Advisors, LLC.

46. Mr. Shumake controlled and directed the affairs of ICG Real Estate Advisors, LLC.

47. In 2006, Mr. Shumake approached the Retirement Systems regarding an opportunity to invest in a real estate fund to be called Inheritance Capital Group.

48. Mr. Shumake proposed to organize the fund as a Michigan limited liability company of which the Retirement Systems and other investors would be members.

49. Mr. Shumake also proposed that the fund be managed by ICG Real Estate Advisors, LLC.

50. On June 2, 2006, Inheritance Capital Group, LLC filed its articles of organization with the State of Michigan.

51. Between July 12-13, 2006, the Boards of Trustees of the Retirement Systems approved a total of $27 million in investments in Inheritance Capital Group, LLC.

52. The Retirement Systems and ICG Real Estate Advisors, LLC entered into the Operating Agreement of Inheritance Capital Group, LLC ("the Operating Agreement") which was effective July 12, 2006.

53. The Retirement Systems were the only investors in Inheritance Capital Group, LLC.

54. Between July 2006 and September 2007, ICG Real Estate Advisors, LLC issued capital calls to GRS in the total amount of $11,999,494.80, which GRS honored.

55. 54. Between July 2006 and September 2007, ICG Real Estate Advisors, LLC issued capital calls to PFRS in the total amount of $14,795,341.24, which PFRS honored.

56. Section 5.1 of the Operating Agreement entitles the manager to an annual management fee equal to 1.25 percent of total assets under management.

57. Based on total investor commitments of $27 million, a 1.25 percent annual management fee would entitle ICG Real Estate Advisors, LLC to $337,500.00.

58. Section 6.6 of the Operating Agreement provides that the manager shall not withdraw funds from Inheritance Capital Group, LLC except as expressly permitted by the Operating Agreement.

59. Notwithstanding the Operating Agreement's proscription of withdrawals by the manager, ICG Real Estate Advisors, LLC withdrew or otherwise received the benefit of millions of dollars from Inheritance Capital Group, LLC beginning in July 2007.

60. In 2010, GRS and PFRS each commenced separate actions against ICG Real Estate Advisors, LLC in the State of Michigan Circuit Court for the County of Wayne to have ICG Real Estate Advisors, LLC removed as manager of Inheritance Capital Group, LLC for reasons unrelated to ¶59.

61. On May 2, 2011, the Wayne County Circuit Court issued an order replacing ICG Real Estate Advisors, LLC with a new entity as manager of Inheritance Capital Group, LLC.

62. On May 3, 2011, the day after the order described in ¶61 was entered, $300,000.00 was transferred from Inheritance Capital Group, LLC with "withdrawal" being the only notation recorded.

63. Mr. Shumake, as 85% owner of ICG Real Estate Advisors, LLC, had the ability, but not the authority, to make the $300,000.00 transfer described in ¶62 on May 3, 2011.

64. Mr. Shumake has not explained the dissipation of the $300,000.00 described in ¶61, the funds from which could otherwise be used to repay his unsecured creditors in these proceedings.

**COUNT I**
**DENIAL OF DISCHARGE PURSUANT TO 11 U.S.C. § 727(a)(2)**

65. Plaintiff hereby incorporates and restates paragraphs 1 through 64 as if fully stated herein.

66. In accordance with 11 U.S.C. § 727(a)(2), the Court shall grant the Debtor a discharge unless - -

> the debtor, with the intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed - -
>
> (A) property of the debtor, within one year before the date of the filing of the petition; or
> (B) property of the estate, after the date of the filing of the petition.

67. As set forth above, Defendant, with the intent to hinder, delay or defraud a creditor has transferred, removed, destroyed, mutilated or concealed property, including but not limited to real and personal property, corporate entities, and the proceeds thereof, before and/or after the filing of the Petition.

68. The Defendant's conduct as described above constitutes an intent to hinder, delay, or defraud a creditor or an officer of the estate, pursuant to 11 U.S.C. § 727(a)(2).

**WHEREFORE**, Plaintiff Daniel M. McDermott, United States Trustee, respectfully requests that this Honorable Court deny Defendant's discharge pursuant to 11 U.S.C. § 727(a)(2).

## COUNT II
## DENIAL OF DISCHARGE PURSUANT TO 11 U.S.C. § 727(a)(3)

69. Plaintiff hereby incorporates and restates paragraphs 1 through 68 as if fully stated herein.

70. In accordance with 11 U.S.C. § 727(a)(3), the Court shall grant the Debtor a discharge unless - -

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case[.]

71. As set forth above, it appears the Defendant has either concealed, destroyed, falsified, or failed to keep information, including books, documents, records and papers from which his financial condition or business transactions might be ascertained.

72. The Defendant's actions and/or failure to act as described herein does not appear justified under all of the circumstances of this case.

**WHEREFORE**, Plaintiff, Daniel M. McDermott, United States Trustee, respectfully requests that this Honorable Court deny the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(3).

## COUNT III
## DENIAL OF DISCHARGE PURSUANT TO 11 U.S.C. § 727(a)(3)

73. Plaintiff hereby incorporates and restates paragraphs 1 through 72 as if fully stated herein.

74. In accordance with 11 U.S.C. § 727(a)(4), the Court shall grant the Debtor a discharge unless - -

> the debtor knowingly and fraudulently, in or in connection with the case - -

(A) made a false oath or account;
(B) presented or used a false claim;
(C) gave, offered, received, or attempted to obtain money, property, or advantage or a promise of money, property or advantage, for acting or forbearing to act; or
(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records and papers relating to the debtor's property or financial affairs.

75. As set forth above, it appears the Defendant has not accurately described his assets and financial condition, and thus have made false oaths with respect to material elements of his assets and financial condition in his Petition, Schedules and/or Statement of Financial Affairs, constituting knowing and fraudulent false oaths under 11 U.S.C. § 727(a)(4)(A).

76. The Defendant's false statements at the § 341 Meeting of Creditors held May 16, 2013, all under penalty of perjury, constitute knowing and fraudulent false oaths under 11 U.S.C. § 727(a)(4)(A).

77. As set forth above, the Defendant knowingly and fraudulently, in or in connection with the case, withheld from an offer of the estate entitled to possession under this title (i.e., the Chapter 7 Trustee), any recorded information, including books, documents, records and papers, relating to the Defendant's property and/or financial affairs, in violation of 11 U.S.C. § 727(a)(4)(D).

**WHEREFORE**, Plaintiff Daniel M. McDermott, United States Trustee, respectfully requests that this Honorable Court deny Defendant's discharge pursuant to 11 U.S.C. § 727(a)(4).

## COUNT IV
## DENIAL OF DISCHARGE PURSUANT TO 11 U.S.C. § 727(a)(5)

78. Plaintiff hereby incorporates and restates paragraphs 1 through 77 as if fully stated herein.

79. In accordance with 11 U.S.C. § 727(a)(5), the Court shall grant the Debtor a discharge unless - -

> the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]

80. As set forth above, the Defendant has failed to explain satisfactorily the loss of deficiency of assets to meet his liabilities, including but not limited to the assets and/or amounts discussed in ¶¶9-64 above.

**WHEREFORE**, Plaintiff Daniel M. McDermott, United States Trustee, respectfully requests that this Honorable Court deny Defendant's discharge pursuant to 11 U.S.C. § 727(a)(5).

    Respectfully submitted,

    **DANIEL M. McDERMOTT**
    **UNITED STATES TRUSTEE**
    Region 9

    By   /s/ Sean M. Cowley (P72511)
         Sean.Cowley@usdoj.gov
         Trial Attorney
         Office of the U.S. Trustee
         211 West Fort St - Suite 700
         Detroit, Michigan 48226
         (313) 226-3432

Dated: June 7, 2013