# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re: | ) Case No. 13-40001 |
| ROBERT SHUMAKE, | ) Chapter 7 |
| Debtor. | ) Hon. Walter Shapero |

## MOTION AND INCORPORATED MEMORANDUM OF LAW BY GREAT AMERICAN INSURANCE COMPANY FOR RELIEF FROM THE AUTOMATIC STAY, TO THE EXTENT APPLICABLE, TO ALLOW REIMBURSEMENT OF LOSS UNDER A D&O LIABILITY INSURANCE POLICY

Great American Insurance Company ("Great American"), the issuer of a Directors' and Officers' and Entity Liability Insurance Policy (the "Policy") to ICG Real Estate Advisors, LLC ("ICG"), brings its Motion For Relief From The Automatic Stay, To The Extent Applicable, pursuant to 11 U.S.C. §§ 362(d), 541(a) and 105(a), and Fed. R. Bankr. P. 4001(a) and 9014, and seeks: (1) an Order finding that Great American's Policy is not property of Shumake's bankruptcy estate and, therefore, the automatic stay imposed by 11 U.S.C. § 362(a) is not applicable to Great American's Policy and Great American may reimburse as it deems appropriate "**Costs of Defense**" incurred by "**Insured Persons**" (*e.g.,* Debtor Shumake) in connection with various lawsuits and adversary proceedings naming Shumake as a defendant (the "Lawsuits", as more fully identified and discussed below); (2) alternatively, an Order, to the extent applicable, that the automatic stay imposed by 11 U.S.C. § 362(a) is terminated so as to permit Great American to reimburse any "**Costs of Defense**" incurred by "**Insured Persons**" (*e.g.,* Debtor Shumake) in connection with the Lawsuits; and (3) an Order that any such payment

of the "**Costs of Defense**" by Great American shall reduce the Policy's aggregate Limit of Liability in a like amount. In support of this Motion, Great American respectfully state as follows:

## INTRODUCTION

1. By this motion, Great American seeks an Order from this Court finding that Great American's Policy is not property of Shumake's bankruptcy estate and, therefore, the automatic stay imposed by 11 U.S.C. § 362(a) is not applicable to Great American's Policy and Great American may reimburse "**Costs of Defense**" incurred by "**Insured Persons**" (*e.g.,* Debtor Shumake) in connection with the Lawsuits (as more fully identified and discussed below) as Great American deems it necessary. Although Great American believes that any entitlement of any of the Directors or Officers (*e.g.,* Shumake) to the proceeds of the Policy for "**Loss**" is not property of the Debtor's estate, Great American has filed this motion out of an abundance of caution. Alternatively, to the extent this Court finds that the automatic stay is applicable, Great American seeks relief from the automatic stay in order to reimburse "**Costs of Defense**" incurred by the "**Insured Persons**" (*e.g.,* Debtor Shumake) relating to the Lawsuits.

## BACKGROUND FACTS

**A.** **The Policy**

2. Prior to the commencement of the bankruptcy case, Great American issued a Directors' and Officers' and Entity Liability Insurance Policy (the "Policy") to ICG. The Policy provides coverage (subject to its terms and conditions) for "any **Claim** first made" against "**Insured Persons**" of ICG during the **Policy Period** of May 18, 2010 to May 18, 2011. "**Insured Persons**" is defined by the Policy as "all persons who were, now are, or shall be


-2-

4713-4001-mlo Doc 81 Filed 09/04/13 Entered 09/04/13 17:00:35 Page 2 of 12

directors, officers" of ICG. The Policy affords a $1,000,000 Limit of Liability. (A copy of the Policy is attached hereto as **Exhibit "4"**.)

3. Subject to its terms, conditions, endorsements and exclusions, the Policy provides coverage under Insuring Clause I.A. to each and every "**Insured Person**" for "**Loss**" arising from any "**Claim**" first made against any **Insured Person** during the **Policy Period** any "**Wrongful Act**." [Ex. A, the Policy, Section I.A.][1] Insuring Clause I.A. thus provides coverage for **Claims** made directly against any **Insured Person** (*i.e.*, Shumake) except to the extent that they are indemnified by ICG. Presently, ICG is not indemnifying any individuals for **Costs of Defense** related to the Lawsuits (defined below).

4. "**Loss**" is defined by the Policy to include, *inter alia*, "compensatory damages,… settlements and **Costs of Defense**." [Ex. A, the Policy, Section III.I.]. The term "**Costs of Defense**" is defined in pertinent part to mean "reasonable and necessary legal fees, costs and expenses" incurred by the **Insured Persons** in defense of any **Claim**. [Ex. A., the Policy, General Terms and Conditions, Section III.B.]. The payment of **Loss**, including **Costs of Defense**, will thus reduce the Policy's aggregate Limit of Liability. [Ex. A., the Policy, General Terms and Conditions, Section IV.A.(3).].

5. By Endorsement No. D15813, the Policy contains a "Order of Payments" provision which requires Great American to "first pay **Loss** for which coverage is provided

---

[1] Any capitalized terms used herein which are defined in the Policy are intended to have the meaning ascribed to such terms by the Policy. Any summary of the Policy's provisions set forth herein is merely for the sake of convenience. Nothing contained herein is intended to contradict the actual wording of the Policy which shall at all times control. Additionally, other than with respect to this Motion, nothing contained herein should be construed as (i) Great American's consent to the jurisdiction of the Bankruptcy Court, or (ii) a waiver of any of Great American's rights, remedies and defenses at law, in equity and under the Policy including, but not limited to, the right to raise any of the terms, conditions, exclusions and/or endorsements to the Policy (and the Proposal Form
(continued . . .)

under Section I.A.," then with respect to whatever remaining amount of the Limit of Liability is available after payments of such **Loss**, Great American may then pay another other **Loss**.

B. <u>The Lawsuits</u>

   (i) <u>Pre-Bankruptcy Lawsuits</u>

6. Prior to the Debtor Shumake filing this bankruptcy case (January 1, 2013), in October 2010, the plaintiff General Retirement System of the City of Detroit filed a lawsuit (amended thereafter) against ICG and Shumake, captioned *General Retirement System of the City of Detroit v. ICG Real Estate Advisors, LLC, et al.*, case no. 10-012652, and filed before the Circuit Court for the County of Wayne, Michigan (the "GRS Pension Lawsuit"). In addition, in September 2010, the plaintiff Police and Fire Retirement System of the City of Detroit filed a lawsuit (amended thereafter) against ICG and Shumake, captioned *Police and Fire Retirement System of the City of Detroit v. ICG Real Estate Advisors, LLC, et al.*, case no. 10-010491, and filed before the Circuit Court for the County of Wayne, Michigan (the "PFR Pension Lawsuit"). Moreover, in June 2011, plaintiff Steven B. Pankake, LLC filed a lawsuit against ICG and Shumake, captioned *Steven B. Pankake, LLC v. ICG Real Estate Advisors, LLC*, *et al.,* case no. 11-2570, and filed before the Circuit Court for the County of Wayne, Michigan (the "Pankake Lawsuit"). The GRS Pension Lawsuit and the PFR Pension Lawsuit have each been administratively stayed (due to the Debtor Shumake's bankruptcy) and dismissed without prejudice. The GRS Pension Lawsuit, the PFR Pension Lawsuit, and the Pankake Lawsuit shall be collectively referred to in this Motion as the "Pre-Bankruptcy Lawsuits."

---

( . . . continued)
thereto (including rescission and/or avoidance of the Policy)) as warranted, all of which are expressly reserved. In this respect, *see* Footnote 2, *infra.*

### (ii) Post-Bankruptcy Lawsuits

7. After the Debtor Shumake filed for bankruptcy (January 1, 2013), on May 16, 2013, the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit filed an adversary proceeding against Shumake captioned, *General Retirement System of the City of Detroit, et al. v. Robert S. Shumake,* adv. no. 13-4554 (the "GRS-PFR Adversary Proceeding"), and on June 7, 2013, the Chapter 7 Trustee filed an adversary proceeding against Shumake captioned, *Daniel M. McDermott, U.S. Trustee v. Robert S. Shumake*, adv. no. 13-4661 (the "Trustee Adversary Proceeding") – both adversary proceedings are presently pending before this Court. The GRS-PFR Adversary Proceeding and the Trustee Adversary Proceeding shall be collectively referred to in this Motion as the "Post-Bankruptcy Lawsuits."

8. Shumake has been and is presently incurring "**Costs of Defense**" related to the Pre-Bankruptcy Lawsuits and the Post-Bankruptcy Lawsuits.

### C. "Insured Person"/Debtor Shumake Has Requested Advancement of the Costs of Defense

9. Since prior to and after the commencement of this bankruptcy case, **Insured Person** and Debtor Shumake has and will continue to incur **Costs of Defense** related to the Pre-Bankruptcy Lawsuits and the Post-Bankruptcy Lawsuits. Subject to the Policy's terms, conditions and exclusions, Great American "shall advance **Costs of Defense** prior to the final disposition of any **Liability Claim**." [Ex.A, the Policy, General Terms and Conditions, Section VIII.F.]

10. The **Insured Person** Shumake is not being indemnified by ICG for the **Costs of Defense** related to the Pre-Bankruptcy Lawsuits and the Post-Bankruptcy Lawsuits (hereinafter, the "Lawsuits") that have been incurred since the commencement of each of the lawsuits. The

Debtor Shumake has requested that Great American advance, pursuant to the provisions of the Policy, such **Costs of Defense** incurred by them and related to the Lawsuits.

11. Subject to there being coverage under the Policy, and subject to this Court agreeing that such payments are permissible, Great American has agreed to advance 50% of such **Costs of Defense** to Shumake and related to the Lawsuits. With respect to the Lawsuits, it is understood that Great American has fully reserved all of its rights and defenses at law, in equity and under the Policy.[2]

## DISCUSSION

### A. The Policy's Proceeds Are Not Property Of Shumake's Bankruptcy Estate

12. Although it is generally stated that an insurance policy issued to a debtor becomes property of its bankruptcy estate, it is well settled that the extent of the estate's interest in the policy is expressly "limited by the contractual provisions within that policy." *In re Jones*, 179 B.R. 450, 455 (Bankr. E.D. Pa. 1995). As noted by the court in *Jones*, "the owner of an insurance policy cannot obtain greater rights to the proceeds of that policy than he would have under state law by merely filing a bankruptcy petition." *Id*. at 455, *citing First Fidelity Bank v. McAteer*, 985 F.2d 114, 117 (3d Cir. 1993) (bankruptcy estate had no rights to proceeds of insurance policy contractually designated for other parties). *See also, In re Continental Airlines*, 203 F.3d 203, 216 (3d Cir. 2000) (the "proceeds from [an] insurance policy should be evaluated separately from the debtor's interest in the policy itself"); *In re Louisiana World Exposition Inc.*,

---

[2] Great American proposes to file, as an adversary proceeding, a declaratory judgment lawsuit against Shumake, requesting this Court to find that there is no coverage under the Policy for the Lawsuits. However, unless and until this Court (or another Court) issues an Order declaring no coverage exists, Great American is advancing the **Costs of Defense** related to the Lawsuits.

832 F.2d 1391, 1400-01 (5th Cir. 1987) (proceeds of D&O policy which did not provide liability coverage for third-party claims against the debtor not property of the estate).

13. Under the Policy, the rights of the Directors or Officers to demand reimbursement of **Costs of Defense** exist independent of any rights afforded to ICG under the Policy. *See, e.g., In re Louisiana World Exhibition*, 832 F.2d 1391 (5th Cir. 1987)(directors and officers entitled to D&O policy's proceeds); *In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004) ("individuals insureds… have a right to use the policies' proceeds to cover their defense and settlement costs in litigation"); *In re Adelphia Communications Corp.*, 298 B.R. 49, 52-54 (S.D.N.Y. 2003) (debtor did not have property interest in proceeds of D&O policies where it had made no payments for which it would be entitled to coverage under the policies).

14. In *In re Laminate Kingdom LLC*, 2008 Bankr. LEXIS 1594 (Bankr. S.D. Fla. 2008), the Chief Judge Emeritus A. Jay Cristol of the Florida Bankruptcy Court examined a virtually identical Policy issued by Admiral Insurance Company ("Admiral"), which also included direct coverage to the Insured-Debtor. *Id.* at *3-5. Like here, Admiral sought bankruptcy court approval to advance the defense costs associated with a lawsuit brought against the directors and officers. *Id.* at *2. In the motion, like here, Admiral argued because the policy was not an "asset of the estate" it should be permitted to advance such legal costs and, even if the policy was deemed an asset of the estate, good cause existed to permit the advancement of the legal costs. *Id.* The Florida Bankruptcy Court agreed, holding and ordering: "Admiral's Policy is not property of the Laminate Kingdom bankruptcy estate and, therefore, the automatic stay imposed by 11 U.S.C § 362 (a) is not applicable to Admiral's Policy; alternatively…that to the extent applicable, the automatic stay imposed by 11 U.S.C § 362 (a) is lifted so as to permit

Admiral to reimburse the reasonable and necessary Costs of Defense incurred by the Directors and Officers since the commencement of this bankruptcy case in connection with the Laminate Claims." *Id.* at *14.

15. Indeed, like here, the *Laminate Kingdom* court found compelling the existence of the "Priority of Payment" provision of the Admiral Policy:

> The Policy's "Priority of Payments Endorsement" specifically requires that the proceeds be used first to pay non-indemnifiable loss for which coverage is provided under Coverage A of this Policy, which coverage includes the Costs of Defense. Then, only after such payments are made, and only if proceeds remain after payment of such Costs of Defense, will the Trustee or the estate be paid any proceeds. Thus, under the language of the Policy itself, the estate has only a contingent, residual interest in the Policy's proceeds; and, payment of the proceeds in accordance with the "Priority of Payments Endorsement" does not diminish the protection the Policy affords the estate, as such protection is only available after the Costs of Defense are paid.

*Id.* at *7-8.

**B. Even If The Policies' Proceeds Could Be Construed As Estate Property,**

<u>*Adequate Cause Exists To Grant Relief From The Stay*</u>

16. Section 362(d) of the Bankruptcy Code provides that the Court may grant relief from the automatic stay on request from a party in interest "for cause." 11 U.S.C. § 362(d). "Cause" is determined on a case-by-case basis and is left to the discretion of the bankruptcy judge. *In re Adelphia Communications Corp.*, 285 B.R. 580, 593 (Bankr. S.D.N.Y. 2002), *vacated and remanded on other grounds,* 298 B.R. 49, 53-54 (S.D.N.Y. 2003).

17. In the present case, "cause" exists for granting relief from the stay in order to permit Great American to advance the Costs of Defense to the debtor Shumake under the Policy. As stated by the New York Bankruptcy Court: "D&O policies are obtained for the protection of

-8-
13-40001-mlo    Doc 81    Filed 09/04/13    Entered 09/04/13 17:00:35    Page 8 of 12

individual directors and officers…in essence and at its core, a D&O policy remains a safeguard of officer and director interests…". *In re First Central*, 238 B.R. at 16.

18. Numerous courts have granted relief from the automatic stay to permit the advancement of defense costs to a debtor's Directors or Officers, like Shumake. *In re World Health Alternatives, Inc.,* 369 B.R. 805 (Bankr. Del. 2007), a Chapter 7 trustee sought to thwart the payment by a D&O insurer to settle a lawsuit against the debtor's directors and officers, because the trustee argued the proceeds of a D&O policy (that also insured the debtor directly) were an "asset of the estate." Disagreeing with the trustee, the Delaware bankruptcy Court held:[3]

> *[T]he proceeds of the Debtor's insurance policy are not property of the estate.* The Court arrives at this conclusion from its review of the "language and scope of the [P]olicy at issue." Allied Digital, 306 B.R. at 509. The Policy proceeds which are being used to fund the Settlement and are being held in escrow by Lead Counsel are from the Policy's Coverage A. World Health, and now the Trustee as successor, has no right to any Coverage A proceeds, which insures only World Health's officers and directors. World Health must look to Coverage B which insures it for indemnification claims. There are no such claims against World Health. If the Trustee is seeking to recover for the wrongs of the defendants in the Trustee's Action pending in this Court, it is not entitled to preference over the settlement of the Consolidated Action. As the Court held in Allied Digital:
>
>> The Trustee's real concern is that payment of defense costs may affect his rights as a plaintiff seeking to recover from The D&O Policy rather than as a potential defendant seeking to be protected by the D&O Policy. In this way, Trustee is no different than any third party plaintiff suing defendants covered by a wasting Policy.

---

[3] Like here, the policy at issue in *World Health* also contained: "a 'Priority of Payments' endorsement (Endorsement No. 11) that specifically provides for payment of damages and defense costs to the directors and officers under Coverage A before any payment is made to World Health under Coverages B and/or C." *Id.* at 808.

*Id.* at 811. (Emphasis added.) *See also, In re Adelphia Communications Corp.*, 285 B.R. at 598 (granting relief from stay in order to permit primary insurer to advance defense costs); *In re Boston Reg'l Med. Ctr., Inc.*, 285 B.R. 87 (Bankr. D. Mass. 2002) (granting relief from stay in order to permit use of the D&O policy proceeds for payment of defense costs); *In re CHS Electronics, Inc.*, 261 B.R. 538, 544 (Bankr. S.D. Fla. 2002) (court held that proceeds of D&O policy ear-marked to fund a securities class settlement were not estate property, and alternatively found cause to lift the stay to allow payments under the policy); *In re Enron Corp.*, 2002 Bankr. LEXIS 544 (Bankr. S.D.N.Y. 2002) (granting relief from stay, to the extent applicable, for payment of defense costs); *In re CyberMedica, Inc.*, 280 B.R. 12, 18-19 (Bankr. Mass. 2002) (granting relief from stay for cause because directors and officers would suffer irreparable harm if prevented from exercising their rights to defense payments under D&O policy). Indeed, the Bankruptcy Court of New York cautioned that "bankruptcy courts should be wary of impairing the contractual rights of directors and officers even in cases where the policies provide entity coverage." *In re Adelphia Communications Corp.,* 285 B.R. at 598.

19. Moreover, as noted above, the Policy contains an express "Order of Payments" provision which mandates Great American to first pay **Loss**, including **Costs of Defense**, incurred by any **Insured Person** (*i.e.*, Shumake), then with respect to whatever remaining amount of the Limit of Liability is available after payments of such **Loss**, Great American shall then pay any other **Loss** incurred under the Policy. *In re Adelphia Communications Corp.*, 285 B.R. at 598, the Court noted that the motion by the insurer for advancement of defense costs in the *Enron* case (2002 Bankr. LEXIS 544) was an "even easier case" for purposes of granting relief from the stay because that policy contained a "priority of payments" provision in the policy. Indeed, in *Laminate Kingdom*, 2008 Bankr. LEXIS 1594, the Bankruptcy Court

-10-
413-40001-mlo    Doc 81    Filed 09/04/13    Entered 09/04/13 17:00:35    Page 10 of 12

interpreted an identical Admiral policy provision, and held the "'Priority of Payments Endorsement' specifically requires that the proceeds be used first to pay non-indemnifiable loss for which coverage is provided under Coverage A of this Policy." *Id.* at *8.

20. Based on the forgoing, Great American respectfully suggests that "cause" under Bankruptcy Code section 362(d) exists to warrant relief from the stay to permit Great American to advance payments of **Costs of Defense** to Shumake related to the Lawsuits.

C. **Permitting the Advancement of Defense Costs Is Appropriate In These Circumstances**

21. Finally, Section 105 of the Bankruptcy Code authorizes this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The purpose of Section 105 is to assure the bankruptcy court's power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction. 2 Collier on Bankruptcy ¶ 105.01 at 105-5 through 105-6 (15th ed. Rev. 2000).

22. Permitting Great American to pay the **Costs of Defense**, pursuant to the Policy's express language, is clearly appropriate in these circumstances. Moreover, no one will be prejudiced by the relief requested herein, because Great American is contractually obligated to reimburse Shumake for **Costs of Defense** incurred.

23. James K. Thurston of Wilson, Elser, Moskowitz, Edelman & Dicker LLP has attempted to obtain the concurrence of the Trustee's counsel in the relief sought in this Motion on September 3, 2013, as required under Local Bankruptcy Rule 9014-1(g), and concurrence has not been obtained.

24. A Copy of the proposed Order is attached hereto as **Exhibit "1"**, a copy of the Notice of Opportunity to Respond is attached hereto as **Exhibit "2"**, a copy of the Certificate of

-11-
413440001-mlo    Doc 81    Filed 09/04/13    Entered 09/04/13 17:00:35    Page 11 of 12

Service is attached hereto as **Exhibit "3"**, and copies of the Documentary Exhibits are attached hereto as **Exhibit "4."**

**WHEREFORE**, for all of the reasons set forth above, it is respectfully requested that the Court enter the proposed Order annexed hereto as **Exhibit "1"** granting this Motion in its entirety and providing that the automatic stay imposed by 11 U.S.C. § 362(a) is not applicable and Great American may advance the **Costs of Defense** related to the Lawsuits and incurred by Shumake (or any other "**Insured Persons**" of ICG later named to the Lawsuits, or any other lawsuits) as Great American deems appropriate, or, alternatively, to the extent applicable, the automatic stay is vacated so as to permit Great American to reimburse **Costs of Defense** which it deems reasonable under the Policy and in reduction of the Policy's aggregate limits, subject to a complete reservation of rights under the Policy, together with such other and further relief as this Court deems just and equitable.

Dated: September 4, 2013

                  **WILSON ELSER MOSKOWITZ**
                  **EDELMAN & DICKER LLP**

    By:    */s/ Mark G. Ledwin*
              Mark G. Ledwin, Esq.[4]
              James K. Thurston, Esq.
              WILSON, ELSER, MOSKOWITZ,
                EDELMAN & DICKER LLP
              1133 Westchester Avenue
              White Plains, New York 10604
              (914) 872-7148 tel
              (914) 323-7001 fax
              Email: mark.ledwin@wilsonelser.com
                     james.thurston@wilsonelser.com

---

[4] Counsel is admitted to the bar of the Eastern District of Michigan and respectfully requests that any requirement for local counsel be waived.