# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

In re:

ROBERT SHUMAKE                      Case No. 13-40001-wsd
       Debtor                           Chapter 7
                                         Hon. Walter Shapero

_____/

## JOINT OBJECTION TO MOTION FOR ORDER APPROVING COMPROMISE

      The Law Offices of Douglas D. Hampton, P.C., and Law Offices of Daniel C. Flint, P.C., creditors in the above referenced Chapter 7 case, does hereby file this Objection to the Trustee's Motion for Order Approving Compromise, wherein Jin Lim (Trustee for Debtor) seeks approval of a Settlement Agreement Between Trustee and the General Retirement System of the City of Detroit and the Police and Fire Retirement System of the City of Detroit (collectively the "Retirement Systems" or "Pension Boards"). As grounds for this objection, the Law Offices of Douglas D. Hampton and the Law Offices of Daniel C. Flint state that:

1. The Motion for Order Approving Compromise indicates on its certificate of service that it was mailed to all creditors on October 1, 2014. This objection is filed within 21 days of said date and is therefore considered timely.

2. The Trustee's compromise seeks approval to settle three Wayne County Circuit Court ("WCCC") cases in order to obtain resolution of the claims by and against the Retirement System and ICG REA Manager, LLC ("Leaseback Manager"). Specifically, those cases include WCCC case Nos.: 10-10491, 10-12652, and 11-009094.

3. The following is a brief overview of the WCCC cases:

a. The ICG-Leaseback case was filed in Wayne County Circuit Court and was a result of the Pension Board's attempt at enforcing an alleged Power of Attorney over ICG Leaseback Fund I in order to prevent Leaseback from making payments to ICG-REA Manager of any monies that Leaseback would have made to ICG-REA Manager under a certain Cash Management Agreement.

   b. Pursuant to the contracts between, ICG, the Pension Boards and AXA, General Motors would make monthly lease payments to AXA (the senior lender) after which AXA would send a portion of said monthly payment to ICG Leaseback Fund I. ICG Leaseback would then send a portion to ICG REA Manager (for consulting services) and the remainder to the Pension Boards.

   c. Prior to the filling of these complaints, ICG refrained from sending the Pension Boards their portion of the monthly payments for a period of 3 months.

   d. As a result of all of the WCCC law suits, AXA (which is the senior lender and the company who receives the initial GM monthly lease payments) decided to withhold sending the portion of GM's monthly payments to ICG Leaseback.

   e. As of July, 2014, the amount of funds that AXA has retained is $5,616,557.15. (*see* **Portfolio Summary - GM- Leaseback – Attached as Exhibit A**).

4. The facts leading up to the ICG Leaseback Litigation (Case No.: 11-009094) are as follows:

   a. As part of the Leaseback deal, the Pension Board entered into an "Intercreditor Agreement" with Senior Lender. Pursuant to this agreement, the Pension Board expressly agreed that itself (and all Loan Documents related to itself) would be subordinate to Senior Lender and all Senior Loan Documents. Specifically, the

Pension Board expressly agreed that "[e]very document and instrument included within the [Junior] Loan Documents shall be subject and subordinate to each and every document and instrument included within the Senior Loan Documents . . . ."

b. On or about July 27, 2011, in an attempt to circumvent ICG, the Pension Board sent AXA a letter alleging that ICG-REA Manager failed to make its required payment, which constitutes a Default under the Junior Loan Documents.

c. In this letter, the Pension Boards assert that they now have the ability to "exercise its remedies under the Assignment of Member Interests, subject to compliance with the terms of the Intercreditor Agreement . . . ." Specifically, the Pension Board attempted to employ the power granted to it under section 8(a) of the Assignment, which states in pertinent part that "[ICG-REA Manager] appoints [the Pension Board] as its attorney-in-fact to take such actions, execute such documents, and perform such actions after the occurrence of an Event of Default . . . ."

d. On or about July 27, 2011, the Pension Board wrongfully used this Power-of-Attorney to direct Senior Lender "to not make any payments to [Plaintiff ICG Leaseback Fund] of any monies that Senior Lender would have made to [Plaintiff ICG Leaseback Fund] under the Cash Management Agreement . . . ."

e. The "Cash Management Agreement" between AXA and ICG (which overrides all Junior Loan Documents) expressly states that ICG "hereby irrevocably appoints [AXA] as [ICG's] attorney-in-fact (such agency being coupled with an interest) . . . ." (Cash Management Agreement, §6.01, p.6).

f. Pursuant to the Intercreditor Agreement, the Junior Loan Documents are subordinate to the Senior Loan Documents and there is no question that the Pension

Board cannot under any circumstances act as power-of-attorney over Plaintiff ICG Leaseback Fund.

g. Consequently, they Pension Board cannot prevail in any of its cases for the simple fact that it in-fact was in breach of contract when it attempted to use an invalid power-of- attorney.

5. More importantly, AXA is currently withholding more than $5.6 million dollars worth of funds, which would otherwise be divided between ICG and the Pension Boards. There is little dispute that ICG owes the Pension Boards the 3 monthly payments it withheld prior to the suits being filed – this amount totals approximately $500,000.00. The remaining balance, or at the very least some portion of the same, should belong to ICG in order for it to be given the benefit of the barging it originally contracted for.

6. Ultimately, the Trustee seeks approval of a settlement that will; (i) dismiss all claims with prejudice and without costs, except that any claim of the Retirement System will be dismissed without prejudice to the extent necessary to preserve its claims in the Nondischargeability Action; (ii) assign Leaseback Manager's membership interest in Leaseback Fund to the Retirement Systems in lieu of foreclosure of the Retirement Systems' security interest; (iii) provide that all past and future GM rents otherwise payable by AXA Equitable to Leaseback are to be paid as directed by the Retirement Systems; and (iv) pay the Trustee $75,000.00.

7. Furthermore, ICG Leaseback Fund I, LLC is not 100% owned by debtor and there is a 15% interest in the fund that the bankruptcy Trustee has no authority over or ability to divest that party of its interest in the Leaseback Fund proceeds. Therefore, the Bankruptcy Trustee

4 of 7

13-40001-mlo    Doc 181    Filed 11/19/14    Entered 11/19/14 14:38:40    Page 4 of 7

cannot propose a settlement which gives all of the funds the Pension Boards minus the $75,000.

8. Despite there being over $5.6 million dollars currently held by AXA, some-of-which the Debtor is no doubt entitled to, the Trustee is willing to give up everything for $75,000.00.

9. This compromise is not in the best interest of the estate *and,* more importantly, is not in the best interest of the creditor body as a whole.

10. In addition, even if this Honorable Court feels that $75,000.00 is a fair and just settlement under the circumstances, Trustee's Motion still must be denied for the simple fact that, on December 19, 2007 (prior to the filing of any of the WCCC case) the GRS and PFRS withdrew all its membership interest in ICG Leaseback Fund I, LLC. (*see* Amended and Restated Limited Liability Company Operating Agreement for ICG Leaseback Fund I, LLC, **Attached as Exhibit B**.)

11. The Amended and Restated Operating Agreement (attached as Exhibit B and clearly signed by both the Police and Fire Retirement System of the City of Detroit and the General Retirement System of the City of Detroit) states in pertinent part that the "GRS and PFRS desire to withdraw from the [ICG Leaseback Fund I, LLC]." (Operating Agreement at p.1) The Operating Agreement continues by stating that "the initial contribution of [ICG-REA Manager, LLC] is $1,000 representing *100% interest* in Company." (Id. At p.3, emphasis added). Consequently there is no question that the GRS and PFRS cannot now claim an interest in the properties, nor the proceeds, of the ICG Leaseback deal.

12. This compromise is not in the best interest of the estate *and,* more importantly, is not in the best interest of the creditor body as a whole.

**WHEREFORE**, the Law Offices of Douglas D. Hampton, P.C. and the Law Offices of Daniel C. Flint, P.C., creditors in the above referenced matter, respectfully request that this Court enter an Order denying the Trustee's Motion for Order Approving Compromise; or in the alternative, to schedule a hearing in order to properly address the issues raised.

Respectfully Submitted,    Respectfully Submitted,

  /s/ Douglas D. Hampton (w/consent)    /s/ Daniel C Flint
**Law Offices of Douglas D. Hampton, P.C.**    **Law Offices of Daniel C. Flint, P.C.**
Douglas D. Hampton (P46378)    Douglas D. Hampton (P46378)
Attorneys for Creditor    Attorneys for Creditor
2000 Town Center, Suite 1900    2000 Town Center, Suite 1900
Soutfield, MI 48075    Soutfield, MI 48075
(248) 432-7072    (248) 918-1969

Dated: October 15, 2014    Dated: October 15, 2014

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

ROBERT SHUMAKE                                    Case No. 13-40001-wsd
        Debtor                              Chapter 7
                                                  Hon. Walter Shapero
_____/

## PROOF OF SERVICE

The undersigned certify that on October 15, 2014, they served a copy of creditors' **Objection to Trustee's Motion for Order Approving Compromise** and **Proof of Service** by placing a copy of the documents in the U.S. Mail addressed to the following:

United States Bankruptcy Court
211 West Fort Street, Suite 2100
Detroit, Michigan 48226

Kimberly Ross Clayson
Schneider Miller, P.C.
645 Griswold, Suite 3900
Detroit, Michigan 48226

The undersigned declare that the statements above are true to the best of our information, knowledge, and belief.

/s/ Douglas D. Hampton (w/ consent)
Douglas D. Hampton, Esq.

/s/ Daniel C Flint
Daniel C. Flint, Esq.

7 of 7

13-40001-mlo    Doc 181    Filed 11/19/14    Entered 11/19/14 14:38:40    Page 7 of 7